IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE H. & DONNA L. LORAH, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 08-703 |
| | : | |
| v. | : | |
| | : | |
| SUNTRUST MORTGAGE, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Jones, J.                                                    February 17, 2009

        Pending before the Court are Plaintiffs' Motion for Remand due to Lack of Subject

Matter Jurisdiction (Doc. No. 5), Defendants' Opposition thereto (Doc. No. 9), and Plaintiffs'

Reply (Doc. No. 11).  For the reasons stated below, Plaintiffs' Motion for Remand is

GRANTED.


**Background and Procedural History**

        On February 8, 2008, Plaintiffs Jamie H. and Donna L. Lorah, on behalf of themselves

and a putative class of similarly situated persons, filed suit against SunTrust Mortgage, Inc.,

("SunTrust") and Wesley Snyder in the Court of Common Pleas of Berks County, Pennsylvania.

Plaintiffs' filed their state court Complaint as an "opt-in" class action under Rule 1711(b) of the

Pennsylvania Rules of Civil Procedure.  (Compl. 2.)  Plaintiffs allege that SunTrust relied upon

Snyder and his corporate instrumentalities ("the Snyder Entities") to originate mortgage loans,

which SunTrust funded and which are the subject of an alleged Ponzi scheme orchestrated by

Snyder.  (<u>See, e.g.</u>, Compl. ¶¶ 13-22.)

Plaintiffs allege that $33,000 of their $98,000 mortgage loan was an illegal brokerage or service fee to the Synder Entities.  (Compl. ¶¶ 57, 59-60.)  Their Complaint contains four counts: civil conspiracy, breach of contract, accounting (wherein Plaintiffs seek an equitable accounting of payments made in connection with their mortgage loan), and unjust enrichment.  They allege that they individually suffered actual damages in an amount less than $75,000 on each of the civil conspiracy, breach of contract, and unjust enrichment counts.  (Compl. ¶¶ 105, 122, 146.)[1]  On those three counts, they seek actual damages, interest, costs, and attorney fees.

The putative class consists of homeowners who, like the named Plaintiffs, obtained "Equity Slide Down" mortgage loans funded by SunTrust through loans originated, processed, and serviced by the Snyder Entities.  (Compl. 3-4, ¶ 70.)  Plaintiffs allege that Suntrust made more than 175 loans to members of the putative opt-in class.  (Compl. ¶ 66.)  Plaintiffs state in their Complaint that

> these claims are not removable to federal court jurisdiction in that . . . there is no diversity jurisdiction (including because the amount in controversy as to the Plaintiffs cannot be met); and there is no CAFA jurisdiction, including, <u>inter alia</u>, because it is not certain or likely that more than 100 persons will opt-in to the class or that the aggregate amount in dispute in this opt-in class will exceed the $5 million requirement of CAFA.

(Compl. ¶ 75.)

On February 13, 2008, SunTrust timely removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441, as amended in part by the Class Action Fairness Act of 2005

---

[1] Plaintiffs do not state the aggregate amount of damages the Lorahs seek on all counts contained in the Complaint.

("CAFA") and as authorized by 28 U.S.C. § 1453.  Plaintiffs now move this Court to remand the action to the state court, alleging a lack of federal subject matter jurisdiction.

**<u>Standard of Review</u>**

A civil action may be removed from state court to the federal district court if the district court would have original jurisdiction over the action.  28 U.S.C. § 1441(a) (2008).  If the district court lacks subject matter jurisdiction over a removed action, it must be remanded.  28 U.S.C. § 1447(c) (2008).

**<u>Discussion</u>**

I.   <u>Pennsylvania's "Opt-in" Class Action Procedure.</u>

Rule 1711 of the Pennsylvania Rules of Civil Procedure provides as follows:

(a)   Except as provided in subdivision (b) or as otherwise provided by the court, in certifying a plaintiff class or subclass the court shall state in its order that every member of the class is included unless by a specified date a member files of record a written election to be excluded from the class.

(b)   If the court finds that (1) the individual claims are substantial, and the potential members of the class have sufficient resources, experience and sophistication in business affairs to conduct their own litigation; or (2) other special circumstances exist which are described in the order, <u>the court may state in its order that a person shall not be a member of the plaintiff class or subclass unless by a specified date the person files of record a written election to be included in the class or subclass.</u>

Pa. R. C. P. 1711 (2002) (emphasis added).  Rule 1711(b) provides for the "opt-in" procedure for class actions in Pennsylvania.  As one Pennsylvania court wrote,

Under Rule 1711, all class actions meeting the prerequisites of Pa. R. C. P. 1702, 1708, 1709, are opt-out class actions unless the

provisions of Rule 1711(b) apply.  An opt-in class action, by
contrast, refers to class suits where no one is included in the class
unless they file a written election to be included in the class.  In
short, you're out unless you say you're in.

Katlin v. Tremoglie, 1999 WL 1577980,  43 Pa. D. & C. 4th 373, 413 n.23 (Pa. Com. Pl. 1999).

According to the commentary to the rule,

Rule 1711(b) . . . gives the court the option to provide a true opt-in
procedure only in certain limited instances, i.e., where (1) the
individual claims are substantial and the potential members of the
class have sufficient resources, experience and sophistication in
business affairs to conduct their own litigation, or (2) other special
circumstances exist which are described in the order. The Rule
does not attempt to defined these 'other' special circumstances
which will vary in each particular case. Equally, this provision is
not intended as a blank check to permit unbridled discretion in the
court to require members of the class to opt in.  The word "other"
suggests that these special circumstances must be of the same
magnitude and character as in (1). Obviously, the provision may
never be applied to conventional consumer class actions involving
numerous members of a class claiming only small amounts who
could not conduct their own litigation.

1977 Commentary to Pa. R. C. P. 1711.

II.    The Class Action Fairness Act (CAFA).

Under CAFA, in order to support federal diversity jurisdiction, a class action must

involve an amount in controversy greater than five million dollars.  28 U.S.C. § 1332(d)(6) ("In

any class action, the claims of the individual class members shall be aggregated to determine

whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest

and costs.").  CAFA also requires a minimum of 100 persons for a class action based on diversity

jurisdiction.  28 U.S.C. § 1332(d)(5)(B); Frederico v. Home Depot, 507 F.3d 188, 195 n.4 (3d

Cir. 2007).

III.    Burden of proof: the *Samuel-Bassett* and *Morgan* standards

The parties rely chiefly on two Third Circuit opinions addressing which party has the
burden of demonstrating the presence or absence of diversity jurisdiction upon removal of a
matter to federal district court: Samuel-Bassett and Morgan.  Samuel-Bassett v. KIA Motors
America, Inc., 357 F.3d 392 (3d Cir. 2004); Morgan v. Gay, 471 F.3d 469, 484 (3d Cir. 2006).
On the one hand, Plaintiffs contend that the Morgan standard applies to this case and instructs
that SunTrust, as the removing defendant, bears the burden of showing the court that the
requirements for federal jurisdiction are present.  They argue that SunTrust cannot demonstrate
with legal certainty that over 100 class persons will opt into the class or that aggregate damages
sought by the class exceed five million dollars.  (Pls.' Mot. to Remand at 1 n.2, 4.)  Plaintiffs also
state that they drafted their Complaint specifically to avoid federal jursidiction.  (Id. at 6.)  On the
other hand, SunTrust contends that the Samuel-Bassett standard applies to this case and that
Plaintiffs bear the burden of establishing that the jurisdictional requirements are not present.
SunTrust argues that, in order for this court to grant Plaintiffs' Motion for Remand, Plaintiffs
must demonstrate to a legal certainty that the class cannot recover the jurisdictional minimum of
five million dollars and that Plaintiffs have not done so.  (SunTrust's Opp'n at 2, 6-7.)

Samuel-Bassett, which the Third Circuit decided in 2004, involved an individual action
that was removed to federal court on the basis of diversity jurisdiction.  The Court held that
"[t]he party asserting jurisdiction bears the burden of showing that at all stages of the litigation
the case is properly before the federal court."  Samuel-Bassett, 357 F.3d at 396.  The Court also

acknowledged the United States Supreme Court's standard from <u>St. Paul Mercury Indemnity Co.</u> <u>v. Red Cab Co.</u>, 303 U.S. 283 (1938), that "the rule for determining whether the case involves the requisite amount is whether 'from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount.' " <u>Samuel-Bassett</u>, 357 F.3d at 396 (quoting <u>Red Cab</u>, 202 U.S. at 289).[2]

In <u>Morgan</u>, the Third Circuit considered an appeal of a district court's remand order in a case that had been removed to federal district court pursuant to CAFA.  The Court held that, "[u]nder CAFA, the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy requirement is satisfied."  471 F.3d at 473.  The court noted that plaintiffs may limit their claims to avoid federal subject matter jurisdiction, <u>id.</u> at 474, and articulated the following instructions as applicable to the <u>Morgan</u> case:

> 1) The party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory threshold; 2) A plaintiff, if permitted by state laws, may limit her monetary claims to avoid the amount in controversy threshold; and 3) Even if a plaintiff states that her claims fall below the threshold, this Court must look to see if the plaintiff's actual monetary demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the demands do not. Key to the present matter is that the plaintiff's pleadings are not dispositive under the legal certainty test. This Court's task is to examine not just the dollar figure offered by the plaintiff but also her actual legal claims.

<u>Id.</u> at 474-475.

---

[2] The <u>Samuel-Bassett</u> standard applies where relevant facts are not in dispute, a removing defendant must demonstrate with "legal certainty" that an action meets the amount in controversy requirement.  Samuel-Bassett v. Kia Motors, 357 F.3d 392.

In <u>Frederico</u>, the Third Circuit distinguished <u>Morgan</u> from <u>Samuel-Bassett</u>, writing,

> In <u>Morgan</u>, the plaintiff expressly limited the amount in controversy to an amount lower than the jurisdictional requirement, stating in the complaint that "the total amount of such monetary relief for the class as a whole shall not exceed $5 million in sum or value."
>
> The claims in <u>Samuel-Bassett</u>, <u>Red Cab</u> and <u>McNutt</u> did not involve such a limitation.  The different circumstances in <u>Morgan</u> called for a different approach to determine whether there was federal jurisdiction.  Against the well-established backdrop that the plaintiff is the master of her own claim and thus may limit her claims to avoid federal subject matter jurisdiction, the panel concluded that where the plaintiff so limits her claim, the party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory threshold.  This "legal certainty" standard differs from that of the cases cited by <u>Samuel-Bassett</u>.  In those cases, the <u>challenger</u> to subject matter jurisdiction had to prove, to a legal certainty, that the amount in controversy <u>could not exceed</u> the statutory threshold.

<u>Frederico</u>, 507 F. 3d at 195 (emphasis in original) (quotations, citations, and alterations omitted).[3]  The <u>Frederico</u> Court emphasized that, "where the plaintiff expressly limits her claim below the jurisdictional amount as a precise statement in the complaint, . . . the proponent of the federal subject matter jurisdiction is held to a higher burden; that is, the proponent of jurisdiction must show, to a legal certainty, that the amount in controversy exceeds the statutory threshold."  <u>Id.</u> at 196 (discussing <u>Morgan</u>).[4]

---

[3] According to the <u>Frederico</u> Court, "The distinction between a case governed by <u>Morgan</u> and a case governed by <u>Red Cab</u> and <u>Samuel-Bassett</u> is crystal clear."  <u>Id.</u> at 196.

[4] The Third Circuit panel concluded that, in that scenario, three instructions apply:
   1)   The party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory threshold;
   2)   A plaintiff, if permitted by state laws, may limit her

> Morgan applies where the complaint specifically avers that the
> amount sought is less than the jurisdictional minimum.  There, a
> defendant seeking removal must prove to a legal certainty that
> plaintiff can recover the jurisdictional amount. By contrast,
> Samuel-Bassett applies where the plaintiff has not specifically
> averred in the complaint that the amount in controversy is less than
> the jurisdictional minimum. There, the case must be remanded if it
> appears to a legal certainty that the plaintiff cannot recover the
> jurisdictional amount.

Frederico at 196-97.

"The holding of Morgan that the party wishing to establish subject matter jurisdiction has

the burden to prove by a legal certainty that the amount in controversy exceeds the statutory

threshold, is a viable precedent to only those diversity class action removal cases where the

original complaint contains such a limitation."  Frederico, 507 F.3d at 196 n.7 (internal

quotations, citation, and alteration omitted).  For the Morgan standard to apply, a plaintiff's

complaint must "specifically (and not impliedly) and precisely (and not inferentially) state[] that

the amount sought in a class action diversity complaint for the class as a whole shall not exceed

$5 million"  Id. at 196 (internal quotations and citations omitted).

---

>           monetary claims to avoid the amount in controversy
>           threshold; and
> 3)    Even if a plaintiff states that her claims fall below the
>           threshold, this Court must look to see if the plaintiff's actual
>           monetary demands in the aggregate exceed the threshold,
>           irrespective of whether the plaintiff states that the demands
>           do not.
> Key to the present matter is that the plaintiff's pleadings are not
> dispositive under the legal certainty test.  This Court's task is to
> examine not just the dollar figure offered by the plaintiff but also
> her actual legal claims.

Morgan, 471 F.3d at 484-485.

In the Lorahs' case, the Plaintiffs do not specifically and precisely state that the amount sought by the class is below the jurisdictional threshold.  Although they specifically and precisely expressly limit their <u>individual</u> damages to below $75,000, they do not state that the <u>class</u> damages are below five million dollars.  Rather, they state, "there is no CAFA jurisdiction . . . <u>because it is not certain or likely</u> that more than 100 persons will opt-in to the class or that the aggregate amount in dispute in this opt-in class will exceed the five million dollar requirement of CAFA."  (Compl. ¶ 75 (emphasis added).)  The Court finds that the wording of the Lorahs' class action complaint is sufficiently equivocal so as to make the instant case subject to the <u>Samuel-Bassett</u> standard rather than the <u>Morgan</u> standard.  Therefore, Plaintiffs, as challengers to federal subject matter jurisdiction, must prove to a legal certainty, that the amount in controversy could not exceed the statutory threshold.  <u>Frederico</u>, 507 F. 3d at 195.  This Court will find it does not have diversity jurisdiction if, "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount."  <u>Frederico</u>, 507 F.3d at 194 (quoting <u>St. Paul Mercury Indemnity Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938)).


IV.    <u>The Parties' Pleadings Regarding CAFA Jurisdiction</u>

"In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court."  <u>Samuel-Bassett</u>, 357 F.3d at 398.   "Because the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy, a defendant's notice of removal then serves the same function as the complaint

would in a suit filed in federal court."  <u>Morgan</u>, 471 F.3d at 474 (internal quotations and citations omitted).

  A.  Plaintiffs' Individual Claims for Damages

  In their Complaint, Plaintiffs do not state an aggregate sum of the damages they seek on all counts.  Instead, they allege that they individually suffered actual damages in an amount less than $75,000 on each of their civil conspiracy, breach of contract, and unjust enrichment counts (Compl. ¶¶ 105, 122, 146).  On <u>each</u> of those three counts, they seek actual damages, interest, costs, attorney fees "and such further additional relief as this Honorable Court deems appropriate under the circumstances."  (<u>See, e.g.</u>, Compl. at 25.)

  Plaintiffs allege that $33,000 of their $98,000 mortgage loan funded by SunTrust was an illegal brokerage or service fee to the Synder Entities.  (Compl. ¶¶ 57, 59-60.)  Plaintiffs also allege that, as a consequence of SunTrust's failure to supervise the Snyder Entities, the failure of the Ponzi scheme was concealed from Plaintiffs and the putative class and, as a consequence, "Plaintiffs were not aware and could not prevent ongoing damage to their credit ratings as a results of mortgage loan delinquencies concealed from them."  (Compl. ¶ 49.)   Any damages sought due to damage to Plaintiffs' credit ratings are not quantified in the complaint.

  On their civil conspiracy count, Plaintiffs allege that they and the putative class members "face substantial economic hardships and duplicative payments and many face imminent and ongoing threats of foreclosure from . . . SunTrust and its assignees in the secondary loan markets."  (Compl. ¶ 89.)  Damages related to this allegation remain non-quantified in the Complaint except for Plaintiffs' statement that they seek an amount less than $75,000 as actual damages as a result of SunTrust's participation in the alleged civil conspiracy.  (Compl. ¶ 105.)

On their breach of contract count, Plaintiffs allege that SunTrust has taken and continued to take improper and aggressive action against Plaintiffs and members of the putative class. (Compl. ¶ 108.)  They allege that SunTrust did not act fairly and in good faith in regard to required loan disclosures, truth in lending, and loan servicing transfer, and that SunTrust failed to monitor and supervise the Snyder Entities.  (Compl. ¶¶ 114-15.)  They also allege that SunTurst allowed the Snyder Entities to collect payment and pre-payments from Plaintiffs and putative class members that were diverted to fund a criminal mortgage loan Ponzi scheme, and that SunTrust continued to threaten late charges, adverse credit reporting and foreclosure for those who refuse improper demands.  (Compl. ¶¶ 117, 119.)  As to the breach of contract claim, Plaintiffs simply state that they seek an amount less than $75,000 as actual damages.  (Compl. ¶ 122.)

On their unjust enrichment count, Plaintiffs allege that SunTrust received unjust enrichment at the expense and detriment of Plaintiffs an other members of the putative class. (Compl. ¶ 134.)  They allege that the payments SunTrust received from the Snyder Entities for the loans belonging to Plaintiffs were derived from co-mingled funds and that those payments were used to pay for promotion and origination of "Snyder-SunTrust loans."  (Compl. ¶¶ 133-40.)  Plaintiffs also allege that SunTrust was unjustly enrichment because the Snyder Entities procured loans from Plaintiffs and putative class members for amounts higher than the Plaintiffs and putative class members desired, requested or needed, and that SunTrust continued to retain the benefits of such unjust enrichment.  (Compl. ¶¶ 141-42.)  Again, in their unjust enrichment count, Plaintiffs allege actual damages in an amount less than $75,000.  (Compl. ¶ 146.)

Finally, Plaintiffs state that, "after the liability of SunTrust has been adjudicated, the

individual and aggregate claims of all members of the proposed Class can be determined by the Court." (Compl. ¶ 83(b).)

Because Plaintiffs seek attorney's fees, the court must consider attorney's fees when calculating the amount in controversy.  See Frederico, 507 F.3d at 199 (citing Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997) (holding that attorney's fees could be as much as thirty percent of the judgment); In re Rite Aid Corp. Securities Litigation, 396 F.3d 294, 303 (3d Cir. 2005) (noting study done by the Federal Judicial Center that found a median percentage recovery range of 27-30% for all class actions resolved or settled over a four-year period).)

Plaintiffs do not seek punitive damages.  See Frederico, 507 F.3d at 198-99 (citing Golden v. Golden, 382 F.3d 348, 356 (3d Cir. 2004) (holding that a court must consider punitive damages when calculating the amount in controversy)).

B.      The Putative Class

Plaintiffs allege that all members of the putative class paid an illegal brokerage fee to the Snyder Entities.  (Compl. ¶ 67.)  They allege that the claims asserted by the Lorahs are typical of the claims of the members of the proposed class, (Compl. ¶ 79) and that "[w]hile the amounts that may be recovered by individual class members who might opt in varies substantially, the individual amounts at stake for most of the homeowners in the putative Class are substantial in relation to the anticipated expenses and effort of administering this action," (Compl. ¶ 78).

Regarding the putative class, Plaintiffs allege that Suntrust made more than 175 loans to putative class members.  (Compl. ¶ 66.)   They also allege that "the proposed Class is sufficiently numerous that joinder of all members, whether otherwise required or permitted, is impracticable."  (Compl. ¶ 73.)  They plead that some of the common questions of law or fact

relevant to the class would be "whether SunTrust should be equitably estopped from denying that payments made by the homeowners of the class to the Snyder Entities were 'good payments' that now bind SunTrust," (Compl. ¶ 74(d)); "whether SunTrust had unclean hands in connection with the illegal and undisclosed brokerage fee paid to the Snyder Entities . . .," (Compl. ¶ 74(f)); and "whether SunTrust . . . failed to properly credit the Plaintiffs and members of the proposed opt-in Class with payments and prepayments of interest and principal on the subject mortgage loans," (Compl. ¶ 74(g)).

       C.      SunTrust's Damages Calculations

       SunTrust's Notice of Removal uses four different calculations to support its argument that the amount in controversy exceeds five million dollars.  It bases its calculations on an affidavit stating that it has identified at least 168 loans that are covered by Plaintiffs' Complaint. (Notice of Removal ¶ 17; Notice of Removal, Ex. A, Jose E. Aponte Decl. ("Aponte Decl.") ¶ 5.)[5]

       First, SunTrust sets forth its calculation that the aggregate principal balance of those 168 loans as of February 1, 2008, was approximately $19,637,000.  (Notice of Removal ¶ 17; Aponte Decl. ¶ 5.)  Second, SunTrust contends that the total monthly payments on those 168 loans total approximately $162,000, and that the return of five years of monthly payments (corresponding to the five years Plaintiffs allege SunTrust was engaged in a Ponzi scheme) would result in an award in excess of $9 million.  (Notice of Removal ¶ 18; Aponte Decl. ¶ 6.)  Third, SunTrust states that Plaintiffs seek the return of their allegedly illegal $33,000 prepayment, and that if 168

---

     [5] The Court observes that this amount corresponds reasonably with the section of Plaintiffs' Complaint wherein Plaintiffs allege that Suntrust made more than 175 loans to putative class members.  (Compl. ¶ 66.)

class members seek an average of $30,000 each the result would exceed five million dollars. (Notice of Removal ¶ 19.)  Fourth, SunTrust argues that, if the Court were to declare all the involved mortgage loans unenforceable, pursuant to Plaintiffs' prayer for further additional relief as the Court sees fit, the amount in controversy would well exceed five million dollars.  (Id. ¶ 20.)

D.      Subject Matter Jurisdiction is Present

Upon consideration of Plaintiffs' Complaint and SunTrust's Notice of Removal, the Court is not satisfied, to a legal certainty, that the putative class cannot reach the requisite count of 100 persons or that the putative class cannot recover five million dollars.  See Frederico, 507 F.3d at 194.  Plaintiffs have not met their burden to demonstrate that subject matter jurisdiction is absent.  Thus, the Court finds it has jurisdiction to review this case.

Plaintiffs have not explicitly limited the amount in controversy to less than five million dollars.   The Court finds that Plaintiffs' Complaint purports to seek a variety of damages, including the return of an illegal $33,000 fee, the return of duplicative payments, and actual damages due to unfair dealings, threats of foreclosure, and credit score damage.  From the face of the Complaint, the court finds that the potential damages are well in excess of $33,000 – quite possibly in excess of $98,000, which was the original principal amount of the Lorah's mortgage from SunTrust.  Although Plaintiffs, as masters of their claims, limit actual damages on each count to less than $75,000, they do not limit to less than $75,000 the actual damages for all counts.

Furthermore, five million dollars, the jurisdictional threshold, divided by the total amount of damages sought for the Lorahs themselves, which the court here estimates as $98,000,

produces a requisite class size of only 51 individuals to meet the amount in controversy requirement.  See Frederico, 507 F.3d at 199 (dividing five million dollars by the amount of damages sought by the named plaintiff to determine the requisite class size).  See also 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds . . . $5,000,000, exclusive of interest and costs.").  Finally, SunTrust has demonstrated in its Notice of Removal that, in four plausible construals of the language of Plaintiffs' Complaint, the amount in controversy is in excess of five million dollars.

Plaintiffs have not explicitly limited members of their putative class to fewer than 100 persons.  They have made no argument regarding the likelihood of putative class members to opt into the class action, should an opt-in class be certified.  Thus, the pleadings contain no basis for the Court to find, to a legal certainty, that fewer than 100 persons would opt into the putative class.

Plaintiffs' attempt to form an opt-in class pursuant to the Pennsylvania Rules of Civil Procedure does not shift to SunTrust the burden of proving the presence of subject matter jurisdiction.  The burden rests on Plaintiffs to demonstrate a lack of jurisdiction, and their Complaint does not do so.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMIE H. & DONNA L. LORAH,     :    CIVIL ACTION
     :
     Plaintiffs,     :    NO. 08-703
     :
     v.     :
     :
SUNTRUST MORTGAGE, INC., et al.,     :
     :
     Defendants.     :

**ORDER**

AND NOW, this 17th day of February, 2009, upon Consideration of Plaintiffs'
Motion for Remand (Doc. No. 5), Defendant SunTrust Mortgage, Inc.'s ("SunTrust") Opposition
thereto (Doc. No. 9), and Plaintiffs' Reply (Doc. No. 11), it is hereby ORDERED that Plaintiffs'
Motion for Remand is DENIED.

It is FURTHER ORDERED as follows:

1.    Pursuant to the court's March 28, 2008, Order, Plaintiffs shall file a
Response to SunTrust's Motion to Dismiss no later than March 2, 2009.

2.    SunTrust may file a Reply in support of its Motion to Dismiss no later than
March 9, 2009.

BY THE COURT:

S/ C. Darnell Jones II
           J.