# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMIE H. & DONNA L. LORAH,          :
*individually and on behalf of all*          :
*those similarly situated*,          :
          :          Civil Action
          Plaintiffs,          :
          :          No. 08-0703
          v.          :
          :
SUNTRUST MORTGAGE, INC., *et al.*,          :
          :
          Defendants.          :

## MEMORANDUM

Presently before the Court is Defendant's Motion to Dismiss (Docket No. 20).

For the reasons that follow, the Motion will be granted in its entirety.

## I. Background

On February 8, 2008, Plaintiffs Jamie and Donna Lorah ("Plaintiffs"), on behalf

of themselves and purportedly on behalf of others similarly situated, filed a Class Action

Complaint in the Court of Common Pleas, Berks County, Pennsylvania.  Defendant SunTrust

Mortgage, Inc. ("SunTrust") timely removed the action to this Court on February 13, 2008, and

Plaintiffs filed a motion to remand on March 13, 2008.  After denying Plaintiffs' remand motion

on February 18, 2009, the Court ordered Plaintiffs to respond to SunTrust's then-pending Motion

to Dismiss.  Rather than file a response, on March 3, 2009, Plaintiffs filed their First Amended

Complaint ("Amended Complaint").  SunTrust moved to dismiss the Amended Complaint

(Docket No. 20), Plaintiffs responded (Docket No. 23), and SunTrust replied (Docket No. 27).

On March 18, 2010, the Court placed this matter on its civil suspense docket pending the decision of the U.S. Court of Appeals for the Third Circuit in Jones v. ABN Amro Mortgage Group, Inc., et al., 606 F.3d 119 (3d Cir. 2010).[1]  The Court returned this suit to its active docket upon notice of that decision, and it ordered the parties to submit supplemental briefing concerning the impact of Jones on resolution of the Motion.  Thereafter, Plaintiffs and SunTrust filed, respectively, a Response to Defendant's Notice of Supplemental Authority (Docket No. 32) and a Supplemental Brief in Support of Dismissal (Docket No. 33).

## II.  Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted).  After the Supreme Court's decision in Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556).  This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S.Ct. at 1949.  Accord Fowler v. UPMC Shadyside, 578 F.3d 203, 210-

---

[1] A petition for panel rehearing in this matter was denied on June 21, 2010.  See Case No. 08-2353, Docket No. 34.

211 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned,

the-defendant-unlawfully-harmed-me accusation.") (internal quotation omitted).[2]

## III. Discussion

### 1. **_Jones_ and _Lorah_**

In September of 2007, the Joneses, represented by the same counsel as now

represent the Lorahs, filed a putative class action against SunTrust, Countrywide, and other

lenders alleging negligence and fraudulent misrepresentation.  The Joneses then filed an

Amended Complaint that abandoned the fraudulent misrepresentation claim and asserted claims

for negligence and violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605

(2010) ("RESPA").  The Amended Complaint sought a declaratory judgment on the theory that

various Snyder Entities were, together, the lenders' loan "servicer."[3]

---

[2]  "It is well-settled that in deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record." Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 190 (3d Cir. 1999) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). However, the Third Circuit has determined that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Ben. Guar. Corp., 998 F.2d at 1196 (internal citations omitted).  See also Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ("Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court."  (quoting 62 Fed. Proc., L.Ed. § 62:508)).  "[C]onsidering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered." Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004).

[3]  The facts alleged in Jones were summarized by the Third Circuit Court of Appeals as follows:

> In 2002, Wesley Snyder ("Snyder"), a mortgage broker, spoke with the Joneses about refinancing the mortgage on their home through one of his companies (the "Snyder Entities"). Snyder offered the

Joneses an integrated "Equity Slide Down Mortgage" product.  In order to refinance with the "Equity Slide Down Mortgage" product, the Joneses signed two sets of documents at two different closings. The first set of documents consisted of a mortgage and note between the Joneses and SunTrust (the "SunTrust Mortgage"), a traditional mortgage lender.  The SunTrust Mortgage was legitimate and provided the requisite funds for the mortgage. There was no reference in the documents relating to the SunTrust Mortgage to Snyder's product, the Equity Slide Down Mortgage.

Six days after the Joneses completed the transaction with SunTrust, Snyder presented the Joneses with the second set of documents which consisted of a purported "mortgage" and "note" between the Joneses and the Snyder Entities.  This transaction purported to "convert" the terms of the SunTrust Mortgage to a lower interest rate and lower monthly payments.  The Snyder Entities offered the lower interest rate if the Joneses "pre-paid a large portion of the principal balance" to the Snyder Entities.  SunTrust, however, was not a party to this transaction and signed none of the documents.  The Joneses made the large cash prepayment that Snyder requested.  As a result, the interest rate and monthly payments on the "Equity Slide Down Mortgage" product were lower than those required under the SunTrust Mortgage.  The Joneses' obligations to SunTrust, however, remained unchanged.  Indeed, the document the Joneses signed with SunTrust provides "If I make a partial Prepayment, there will be no changes in ... the amount of my monthly payment unless [SunTrust] agrees in writing to those changes."  However, the documents the Joneses signed with the Snyder Entities did make changes. Significantly, as the complaint states, the Snyder Entities "dictate[d] that all monthly payments were to be remitted to them," and, at the Snyder Entities' request, the Joneses signed a change-of-address form instructing SunTrust to direct all future correspondence to the Snyder Entities.  This effectively forestalled communication between the Joneses and SunTrust.

Meanwhile, the Snyder Entities remitted to SunTrust the full monthly payments due on the Joneses' SunTrust Mortgage. According to the Joneses' counsel, the Snyder Entities did so by using the funds accumulated by the large prepayments to make up for the shortfall in what the Joneses were paying monthly under the "Equity Slide Down Mortgage" product.  In 2005, the Joneses

SunTrust and other named lenders moved to dismiss for failure to state a claim.  The Honorable

James Giles, U.S.D.J., granted the lenders' motion to dismiss and denied the Joneses' request for

leave to amend.  The putative class was never certified, and the Joneses appealed.

   The U.S. Court of Appeals for the Third Circuit affirmed the dismissal.  The

decision of the Court of Appeals was straightforward, and it turned on the central allegations that

the Snyder Entities were "loan servicers" under RESPA and/or common law agents of the

defendants.  Id. at 124-26.  In short order, the Third Circuit concluded that Plaintiff's factual

averments were insufficient to support the allegation that the Snyder Entities were loan servicers

under the definition set forth in RESPA given the nature of the Ponzi scheme in question and the

terms of the loans made by the defendants.  Id. at 124-25.  Furthermore, the Third Circuit

---

completed a similar transaction with the Snyder Entities on another
property, the financing for which was provided by nBank.  The
related mortgage was later assigned to Countrywide.

Unbeknown to the Joneses, the "Equity Slide Down Mortgage"
product was "bogus;" the Snyder Entities created the product as a
deception.  The only mortgage loans were with SunTrust and
Countrywide.  In 2007, the scheme collapsed and the Snyder
Entities declared bankruptcy, at which time the Joneses learned
that SunTrust and Countrywide held their mortgages.  Once the
Snyder Entities stopped making payments on the Joneses'
mortgages to SunTrust and Countrywide, those banks demanded
from the Joneses the monthly payments due on their mortgages.
As noted above, the Snyder Entities had been making those
payments by using, in part, the large prepayments of principal from
the Joneses and other victims that Snyder had "pocket[ed]."
Snyder was indicted and ultimately pled guilty to mail fraud in
connection with the scheme, which affected hundreds of mortgage
loans. He was sentenced to 146 months in prison.

Jones, 606 F.3d at 121-23.

concluded that the Plaintiffs had "point[ed] to no action" of the defendant lenders which suggested an agency relationship with the Snyder Entities. Id. at 125. Indeed, the Court explicitly stated: "We do not suggest that there may not be an instance in which the actions of the original lender clothe another with apparent authority as a 'servicer.' *This is not such a case.*" Id. at 125 n.4 (emphasis added). Finally, the Third Circuit affirmed the denial of leave to amend the complaint for a second time as both futile and inequitable. Id. at 125-26.

Now, in the instant matter, Plaintiffs bring claims on their own behalf and on behalf of a putative class which consists of "all persons who used Image Masters, Inc. as a loan servicer at the direction of OPFM, Inc. for purposes of loan payments and prepayments relating to a mortgage loan from SunTrust that originated by or through and OPFM, Inc." Id. at ¶ 108.[4] Plaintiffs bring four counts: (1) civil conspiracy; (2) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); (3) Breach of Contract - Implied Duty of Good Faith and Fair Dealing; and (4) Declaratory Relief. Id. at pp. 27-41.[5]

---

[4] Image Masters, Inc. and OPFM, Inc. are the relevant "Snyder Entities."

[5] As an initial matter, Plaintiffs contend that the invocation of different causes of action takes this case outside the reach of Jones. This is only true to a certain extent. The Third Circuit's key holdings in Jones were predicated upon the plaintiffs' core factual allegations, and the instant case is predicated on the same factual scenario alleged there – including the same Ponzi scheme, the same participants, and the same relationship between Defendants and the Snyder Entities. See Amended Complaint, passim. Thus, to the extent claims in this suit are dependent on those same facts and the same characterization of the relationship between the Snyder Entities and SunTrust, Jones is on-point. Where such is not exactly so, the Court of course adds its own analysis as appropriate.

In the face of the pronouncements of <u>Jones</u>, Plaintiffs contend that the Amended Complaint in this matter should survive the instant Motion to Dismiss.  Plaintiffs broadly reference a "more fully developed record."  Pl's Supp. Br. at 2.  However, the Court does not find any additional, specific averments that fundamentally alter the Third Circuit's apt analysis; to the contrary, the Court concludes that the factual allegations of the instant Amended Complaint are substantially and fundamentally identical to those in <u>Jones</u>.  Plaintiffs have clearly ratcheted their rhetoric up to a remarkable degree, however naked rhetoric and factual content that enables the Court to draw reasonable inferences of liability for misconduct are different matters.

   2.   <u>Agency and UTPCPL Claims</u>

Because <u>Jones</u> rejected the notion of the Snyder Entities being SunTrust's agents by way of being loan servicers as defined by RESPA (the law exclusively governing loan servicing), 551 F. Supp. 2d at 411, Plaintiffs must now attempt to hang their hat on pleading common law agency.  There are two kinds of common law agency – actual and apparent.  The former does not require discussion: the Court finds that, as implicit in <u>Jones</u>, Plaintiffs have not alleged sufficient facts, beyond bald assertions, to support a reasonable inference that SunTrust manifested and exercised direct control of the Snyder Entities to do much of anything, let alone swindle the Plaintiffs via the equity slide down program.

If Plaintiffs were to be able to proceed here, as opposed to in <u>Jones</u>, they would need to sufficiently plead apparent authority to support claims under Pennsylvania's Consumer Protection Law, 73 P.S. § 201-2 (West 2010) ("UTPCPL").  In an attempt to do so, Plaintiffs assert that certain exhibits supplement the factual scenario presented in <u>Jones</u>.  First, Plaintiffs

highlight a SunTrust form letter addressed to the Lorahs in which SunTrust discloses loan

information regarding the equity slide down mortgage and refers to a Snyder Entity as a

"potential lender."  Plaintiffs contrast this to a letter utilized in <u>Jones</u>, which was addressed to a

non-party of the lawsuit.  <u>Jones</u>, 606 F.3d at 125, n.3.  However, the distinction is of no import

because the Lorahs' letter does not characterize the relationship of SunTrust and the Snyder

Entities and does not state that the Snyder Entities were agents of SunTrust.  Second, Plaintiffs

refer to the Lorahs' specific equity slide down loan documents.  Nothing in those documents,

however, indicates that SunTrust produced them for the Snyder Entities, let alone gave those

entities the authority to sell the mortgage product at issue on their behalf.  In fact, SunTrust is

only mentioned in the documents in order to name the original mortgagor to which the Snyder

Entities were agreeing to make payments for the Lorahs' original loan.  Finally, Plaintiffs

highlight a blank SunTrust Mortgage Broker Agreement.  But even if SunTrust and the Snyder

Entities signed such an agreement (as Plaintiffs aver, Am. Compl. ¶ 32, despite not producing a

signed version), and the public had access to the document after Plaintiffs bought the Snyder

Entities' mortgage product, the Agreement does not support an allegation of agency because it

explicitly states that brokers shall not "be deemed an agent, employee or legal representative of

the other party."  No other "additional" exhibits are of material significance.  The Court

concludes that these supplemental allegations do not support a reasonable inference that

SunTrust clothed the Snyder Entities with apparent authority.

       Plaintiffs also argue that their allegations about the business relationship between

SunTrust and the Snyder Entities are more detailed in the instant Amended Complaint than they

were in <u>Jones</u>, so as to establish a sufficient inference of apparent agency.  More specifically,

Plaintiffs cite purportedly enhanced allegations that SunTrust and the Snyder Entities had an extensive business relationship over time (Am. Compl. ¶ 18); SunTrust profited from the Snyder Entities' activities (Am. Compl. ¶ 61); and SunTrust paid the Snyder Entities commissions and awarded them recognition plaques (Am. Compl. ¶ 19, 47).  Under Pennsylvania law, apparent agency is the "power to bind a principal which the principal has not actually granted, but which leads persons with whom his agent deals to believe that he has granted." L & M Beverage Co. v. Anheuser Busch, Inc., No. 85-6937, 1988 U.S. Dist. LEXIS 9223, *33 (E.D. Pa. Aug. 16, 1988). Thus, to determine whether Plaintiffs have adequately pleaded a claim hinging upon apparent agency, the Court looks to whether Plaintiffs allege conduct of the purported principal (not alleged in Jones) "which, reasonably interpreted, causes [a] third party to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Reibstein v. CEDU/Rocky Mt. Acad., No. 00-1781, 2000 U.S. Dist. LEXIS 18206, *27 (E.D. Pa. Dec. 20, 2000) (quoting Adriatic Ship Supply Co. v. M/V Shaula, 632 F. Supp. 1573, 1575 (E.D. Pa. 1986)).  The Court finds the Amended Complaint does not sufficiently allege such conduct. See Am. Compl. at ¶ 53 ("OPFM created the false appearance..."); ¶ 19 (failing to allege any larger or additional payment for second loan transaction); ¶ 47 (failing to allege that plaques reference any achievements by OPFM beyond brokering normal SunTrust mortgages).  Indeed, because the "second" loan parts of the equity slide down transactions at issue did not affect SunTrust's benefits under the original mortgages, Jones, 606 F.3d at 122, there is no reasonable inference to be drawn that SunTrust had any reason to award plaques or pay commissions in

relation thereto those "second" loans.[6]

The Court concludes that, under <u>Twombly</u> and its progeny, the Amended Complaint fails to sufficiently plead facts to support an inference of agency.[7]  As a result, Plaintiff's Amended Complaint must be dismissed as to Count Two to the extent that Count relies upon either UTPCPL §§ 201-2(4)(v) ("Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have"), or 201-2(4)(xi) ("Advertising goods or services with intent not to sell them as advertised").

There remains UTPCPL § 201-2(4)(xxi), a "catch-all" provision which provides that "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding" constitutes an "unfair or deceptive practice."  73 P.S. § 201-2 (West 2010); <u>Toy v. Metropolitan Life Ins. Co.</u>, 593 Pa. 20, 928 A.2d 186, 190 n.4 (Pa. 2007). The UTPCPL must be construed liberally.  <u>See</u> <u>Keller v. Volkswagen of Am., Inc.</u>, 1999 Pa. Super. 153, 733 A.2d 642, 646 (Pa. Super. 1999).  Following a set of amendments to the

---

[6] Plaintiffs do not allege that SunTrust and the Snyder Entities' business relationship was exclusive.  <u>See</u> <u>Garczynski v. Countrywide Home Loans, Inc.</u>, 656 F. Supp. 2d 512-13 (E.D. Pa. 2009) (failure to allege exclusive relationship is more conducive to inference of action as independent broker rather than existence of apparent authority); <u>Morilus v. Countrywide Home Loans, Inc.</u>, 651 F. Supp. 2d 292, 301-01 (E.D. Pa. 2008) (same).

[7] The Court notes that, if the Third Circuit had thought there was any possibility Plaintiffs could enhance their allegations to sufficiently plead agency – by, for example, adding some or all of the very "additional" details Plaintiffs purport to rely upon now – that Court would have afforded the <u>Jones</u> Plaintiffs an opportunity to amend.  It pointedly did not.

UTPCPL in 1996,[8] federal courts in this District have come to the general view that a plaintiff may proceed under the "catch-all" provision either by (1) pleading all the elements of common law fraud or (2) alleging deceptive conduct and an ascertainable loss but not necessarily all the elements of common law fraud.  See Hansford v. Bank of Am., 2008 U.S. Dist. LEXIS 65502, *39-40 and n.7 (E.D. Pa. Aug. 22, 2008).[9]

First, to sufficiently plead "fraudulent" conduct under the UTPCTL, Plaintiffs must allege facts to support a reasonable inference that SunTrust is liable for common law fraud. Levine v. First Am. Title Ins. Co., 682 F. Supp. 3d 442, 467 (E.D. Pa. 2010) (citing Weinberg v. Sun Co., 565 Pa. 612, 777 A.2d 442, 445-46 (Pa. 2001)).  One of the elements of common law fraud is a material misrepresentation, Santana Products, Inc. v. Bobrick Washroom Equip, Inc., 401 F.3d 123, 136 (3d Cir. 2005) – that is, a misrepresentation "made with the intent of

---

[8] In 1996, the catch-all provision was amended to include the words "or deceptive." Hunt v. United States Tobacco Co., No. 06-1099, 2006 U.S. Dist. LEXIS 64960 (E.D. Pa. September 11, 2006).

[9] Pennsylvania state courts have remained somewhat divided, and the Pennsylvania Supreme Court has not yet addressed this issue. Most recently, the Pennsylvania Supreme Court held that a claim of fraud under the UTPCPL's catchall provision requires proof of all of the elements of common law fraud, including justifiable reliance. Toy, 928 A.2d at 201-03. However, the Supreme Court explicitly declined to address whether its holding applied to claims of *deceptive*, rather than *fraudulent*, practices. Id. at 203 n.20.  This Court joins many (although not all) courts in this District in predicting that the Pennsylvania Supreme Court would permit a plaintiff who alleges "deceptive" conduct to proceed without proving all of the elements of common law fraud. See, e.g., Seldon v. Home Loan Servs., 647 F. Supp. 3d 451, 468-470; Hansford 2008 U.S. Dist. LEXIS 65502 at *39; Chiles v. Ameriquest Mortgage Co., 551 F. Supp. 2d 393, 399 (E.D. Pa. 2008); Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427 (E.D. Pa. 2002), In re Crisomia v. Parkway Mortgage Co., 286 B.R. 604 (Bankr. E.D. Pa. 2002); Patterson v. Chrysler Fin. Co., 263 B.R. 82 (Bankr. E.D. Pa. 2001).

misleading another to rely on it." Levine, 682 F. Supp. 2d at 467.[10]   However, the Amended

Complaint does not so allege – i.e., rather than alleging that SunTrust proactively intended to

mislead the Plaintiffs, it actually avers such elements as "inaction," "lack of diligence," and

"slacking off."  Second, to sufficiently plead "deceptive" conduct, Plaintiffs must allege a

deliberately deceptive act and resulting harm.  Seldon, 647 F. Supp. 2d at 470.  However, such an

act would not, for example, include "touting" the performance of a financial tool created by

another party and used for corrupt purposes.  See Belmont v. MB Inv. Partners, Inc., 2010 U.S.

Dist. LEXIS 57822, *2-4 (E.D. Pa. June 12, 2010) (where defendant investment company had

touted the performance of an enhanced stock index fund formed by an employee and used to

operate a Ponzi scheme, noting the plaintiffs' loss was directly attributable to an employee's lies,

embezzlement and Ponzi scheme rather than to anything the company did).[11]   Here, Plaintiffs

merely allege that Defendants, in various ways, touted their relationship with the Snyder Entities.

Again setting aside an excessive number of bald legal assertions and conclusory

statements that are insufficient under Twombly and its progeny (e.g., Am. Compl. ¶¶ 156-157),

the Court concludes that Plaintiffs have not adequately pleaded that SunTrust, either by itself or

through its agent, engaged in either fraudulent or deceptive conduct that Plaintiffs relied on to

their detriment.  As a result, Count Two must be also be dismissed as to any UTPCPL "catch-all"

---

[10]   All the elements of common law fraud are: (1) misrepresentation of a material fact; (2)
scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party
defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate
result.  Christopher v. First Mutual Corp., No 05-1149, 2006 U.S. Dist. LEXIS 2255, *9-10 (E.D.
Pa. Jan. 20, 2006).

[11]   Compare with Hansford, 2008 U.S. Dist. LEXIS 65502 at *39 (plaintiff sufficiently
pleaded deceptive conduct by alleging that defendant bank itself reneged on numerous, specific
repayment plan agreements).

claim.

### 3.      Civil Conspiracy Claim

Count One must also be dismissed.  A civil conspiracy claim requires "an agreement between the parties to inflict a wrong against or injury upon another."  <u>Adams v. Teamsters Local 115</u>, 214 Fed. Appx. 167, 172 (3d Cir. 2007).[12]  However, rhetoric aside, Plaintiffs fail to sufficiently aver that SunTrust proactively agreed with the Snyder Entities to commit wrongdoing.  The mere implication that SunTrust was motivated to maintain its business relationship with the Snyder Entities because of its interest in financial rewards is insufficient to support an inference that SunTrust acted solely with malice or intent to injure Plaintiffs.  <u>See, e.g.</u>, <u>Morilus</u>, 651 F. Supp. 2d at 313 (dismissing civil conspiracy claim because the commission of fraud "does not necessarily indicate that the [party] acted with the specific intent to injure [the other party]"); <u>Becker v. Chi. Title Ins. Co.</u>, 2004 U.S. Dist. LEXIS 1988, *39-40 (E.D. Pa. Feb. 4, 2004) ("An essential element of proof for conspiracy is malice or intent to injure... Pennsylvania courts have found that this element of malice will only be found when the sole purpose of the conspiracy is to cause harm to the party who has been injured.") (internal citations omitted).  Here, even if there were averments that SunTrust acted to injure Plaintiffs, other factual allegations that "[SunTrust] acted to advance [its] own business interests, and not *solely* to injure [Plaintiffs], negate any alleged intent to injure."  <u>Becker</u>, 2004 U.S. Dist. LEXIS at * 40

---

[12] Pennsylvania law provides that the elements of a civil conspiracy are "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  <u>Bristol Township v. Independence Blue Cross</u>, 2001 U.S. Dist. LEXIS 16594 (E.D. Pa. October 12, 2001).

(emphasis added).[13]

### 4.      Breach of Duty of Good Faith and Fair Dealing Claim

Count Three must also be dismissed.  The gist of Plaintiffs' allegations concerning the breach of duty of good faith claim are that SunTrust acted unreasonably in (1) being unaware of the Snyder Entities' criminal activities, and (2) refusing to reasonably accommodate Plaintiffs (to SunTrust's own detriment) for the harm caused by the Snyder Entities (e.g., by not imposing late fees, applying certain loan balances, reporting negative credit events, or threatening foreclosure).[14]  This claim cannot be maintained for two reasons.

First, in Pennsylvania a lending institution cannot "violate a separate duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights as creditor.  The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract." Elleta Corp. v. Bank of New England, N.A., 1990 U.S. Dist. LEXIS 847, *6 (E.D. Pa. Jan. 25, 1990) (quoting Creeger Brick & Bldg. Supply, Inc. v. Mid-State Bank & Trust Co., 560 A.2d 151, 154 (Pa. Super. Ct. 1989)).  Likewise, a lender does not breach its duty of good faith merely by refusing to delay recovery after a debtor defaults.  Id.  See also Bedrock Stone and Stuff, Inc. v. Mfrs. and Traders Trust Co., 2005 U.S. Dist LEXIS 10218, *21 (E.D. Pa. May 25, 2005)

---

[13] Moreover, Plaintiffs' civil conspiracy claim also fails because, as discussed in the other sections of this Order, Plaintiffs have failed to sufficiently allege any underlying tort.  Toy, 863 A. 2d 1, 14 (Pa. Super. 2004); Heritage Surveyors & Engineers, Inc. v. National Penn Bank, 801 A.2d 1248, 1253 (Pa. Super. 2002).

[14] Pennsylvania courts have adopted the principle embodied in Section 205 of the Restatement (Second) of Contracts – namely, that every contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement.  Quandry Solutions, Inc. v. Verifone, Inc., 2009 U.S. Dist. LEXIS 31459, *46-47 (E.D. Pa. Apr. 13, 2009).

(noting only rights exercised in an unreasonable manner will breach the implied duty).

Second, under Pennsylvania law, the Court may not imply a contract different from the contract expressly adopted by the parties. Hutchison v. Sunbeam Coal Corp., 513 Pa. 192, 519 A.2d 385, 388) (Pa. 1986). Plaintiffs allege that SunTrust acted in bad faith with respect to loan disclosures, Snyder's "leveraging" of authority, and the Snyder Entities' breach of SunTrust's regulations. Plaintiffs aver that the mortgage servicing Ponzi scheme would not have operated if SunTrust had supervised and audited the Snyder Entities in a reasonable manner and ensured compliance with SunTrust's own standard rules and regulations. However, Plaintiffs have averred no facts to support a claim that the original SunTrust Notes or Mortgages required SunTrust to investigate the second equity slide down mortgage product, evaluate the Snyder Entities' credibility, or monitor the Snyder Entities' actions. Indeed, the SunTrust Mortgages are focused on payment obligations, not third-party relationships. Explained differently, Plaintiffs do not actually allege that SunTrust breached any of the terms of the underlying Notes or Mortgages. Rather, Plaintiffs' breach of the covenant of good faith and fair dealing claim is premised on purported responsibilities aside from the satisfaction of the obligations of those documents. This is impermissible. See, e.g., Benchmark Group, Inc., v. Penn. Tank Lines, Inc., No. 07-2630, 2009 WL 943515 (E.D. Pa. Apr. 8, 2009) ("In order to plead a cause of action for breach of the covenant of good faith, whether it is an express or implied covenant, a plaintiff must allege facts to establish that a contract exists or existed, including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract *other than the covenant of good faith and fair dealing*, and that resultant damages were incurred by plaintiff.") (emphasis in original) (citing Sheinman Provisions, Inc. v. Nat'l

Deli, LLC, No. 08-453, 2008 WL 2758029, at *3 (E.D. Pa. Jul. 15, 2008)).  Here, Plaintiffs do

not aver that SunTrust breached specific provisions of the original Notes and Mortgages.

Expanding the scope of SunTrust's duties to allow Plaintiffs' claim is specifically disfavored by

law because it would imply a contract different from the SunTrust Notes and Mortgages.

### 5.     **Declaratory Judgment**

Count Four is facially deficient because declaratory judgment is a remedy, not a

count.  Jones v. ABN AMRO Mortg. Group, Inc., 551 F. Supp. 2d 400, 406 (E.D. Pa. 2008).

Because the Court is dismissing Plaintiffs' substantive claims, the claim for a declaratory

judgment is also appropriately dismissed.  Jones, 606 F.3d at 126 n.5.

### 6.     **Amendment**

The Court finds granting leave to amend would be both futile and inequitable

because, based on the Court's examination of Plaintiffs' claims and the Plaintiffs' generalized

request, there is no indication that re-pleading would correct the defects identified herein.  See

Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 256 n.14 (3d Cir. 2010).

## IV.    **Conclusion**

This matter will be dismissed in its entirety with prejudice.  An appropriate Order

follows.